IN THE UNITED STATES DISTRICT COURT
FOR SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| HOLLY PRUIETT, a/k/a HOLLY SHORT, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) |
| UNITED STATES OF AMERICA, | ) ) |
| Defendant. | ) ) ) |
| UNITED STATES OF AMERICA, | ) ) ) |
| Third-Party Plaintiff, | ) ) |
| vs. | ) ) |
| WILLIAM LUCHTEFELD, | ) ) |
| Third-Party Defendant, | ) ) |

Case No. 3:22-cv-992-DWD

## MEMORANDUM & ORDER

**DUGAN, District Judge:**

Defendant, the United States of America, filed a Motion to Dismiss the Complaint ("Motion") (Sealed Doc. 16) under Federal Rule of Civil Procedure 12(b)(6). Plaintiff filed a Response in Opposition to the Motion (Doc. 20). Defendant then filed a Reply in Support of the Motion (Sealed Doc. 21). For the following reasons, the Motion is **DENIED**.

### I. Background

Plaintiff filed a four-count Complaint against Defendant under § 2674 of the Federal Tort Claims Act ("FTCA"). *See* 28 U.S.C. § 2674; (Doc. 1, generally). Plaintiff alleges her primary medical provider, Third-Party Defendant, William Luchtefeld, was

employed by Defendant as a nurse practitioner at a Veterans' Affairs ("VA") facility. (Doc. 1, pg. 2). On June 3, 2019, Plaintiff had an appointment at the VA facility for a "primary care provider established visit." (Doc. 1, pg. 2). Plaintiff was seeking treatment for abdominal pain just below her rib line. (Doc. 1, pg. 2). Previously, Plaintiff had anxiety, which she reported as "doing better," and a mammogram that resulted in a negative biopsy. (Doc. 1, pg. 2). Without Plaintiff's consent, Luchtefeld allegedly "began holding Plaintiff's sides and rubbing on her nipples with his thumbs." (Doc. 1, pgs. 2-3). Luchtefeld then recommended a pelvic exam, which Plaintiff refused. (Doc. 1, pg. 2). Plaintiff left the VA facility before any further contact could be had with Luchtefeld. (Doc. 1, pg. 2). On February 10, 2020, Plaintiff reported to employees of the VA facility that she needed mental health services due to the prior examination by Luchtefeld. (Doc. 1, pg. 3).

In Count I, Plaintiff alleges Defendant is vicariously liable for the negligent infliction of emotional distress by Luchtefeld. (Doc. 1, pg. 1). Defendant, through Luchtefeld, allegedly breached its duty to engage in reasonable conduct for the benefit of Plaintiff and to guard against emotional distress flowing from Luchtefeld's actions. (Doc. 1, pg. 3). Plaintiff notes the special relationship she has with Defendant, as her medical provider, and her history of post-traumatic stress disorder and anxiety. (Doc. 1, pg. 3).

In Count II, Plaintiff alleges Defendant is directly liable for its negligent supervision of Luchtefeld. (Doc. 1, pg. 4). During the examination, Luchtefeld was an employee working on Defendant's premises. (Doc. 1, pgs. 4-5). Defendant allegedly knew of the need and opportunity to control Luchtefeld, based on knowledge of Luchtefeld's interactions with female patients and the circumstances surrounding his examination of

a female patient under the age of 35, to avoid risks of harm to patients. (Doc. 1, pg. 5). Defendant allegedly breached its duty by not having a female nurse or assistant present for the examination, informing Luchtefeld or Plaintiff whether the examination was recorded, having devices recording the examination, or having measures to deter misconduct during the examination. (Doc. 1, pg. 5).

In Count III, Plaintiff alleges Defendant is directly liable for negligently hiring and retaining Luchtefeld before June 3, 2019. (Doc. 1, pg. 6). Despite Luchtefeld's "dangerous proclivities," Defendant hired and subsequently retained Luchtefeld as an employee who could conduct unsupervised medical examinations of patients. (Doc. 1, pg. 6). Further, it was because of Defendant's alleged negligent hiring and retention of Luchtefeld that he could conduct the unsupervised medical examination of Plaintiff. (Doc. 1, pg. 5).

In Count IV, Plaintiff alleges Defendant is directly liable for negligently hiring and retaining Luchtefeld after a report by Plaintiff on July 29, 2019. On that date, Plaintiff called the VA facility to report symptoms from a tick bite. (Doc. 1, pg. 7). It was recommended that Plaintiff follow-up with Luchtefeld. (Doc. 1, pg. 7). Plaintiff allegedly stated, "I am not comfortable going back to him, but I am afraid to transfer care because he can go in my records and screw them up." (Doc. 1, pg. 7). The VA facility employees did not follow up with Plaintiff about the cause of her discomfort with Luchtefeld. (Doc. 1, pg. 8). The following statement was purportedly recorded in her medical records:

> I assured her that providers are not able to false [sic] documents, and recommend that she sign up for My HealthyVet in order to monitor her records. Also, informed her that if she has a problem with any provider, she can transfer care, or contact the Patient Advocate. Informed her that she can come to JC ER for care, or go to Urgent Care via the Mission Act. She states

> that with her husband being hospitalized, and having to care for children, she chooses not to seek care at this time.

(Doc. 1, pg. 8).

Plaintiff alleges the VA facility employees never conducted a follow up, so Luchtefeld remained in Defendant's employ. (Doc. 1, pg. 8). On November 21, 2019, Luchtefeld allegedly sexually abused another patient. (Doc. 1, pg. 8). Luchtefeld was fired in January 2020, when the VA police arrested him for that incident. (Doc. 1, pg. 8). Since Luchtefeld was retained by Defendant after the July 29, 2019, report, Plaintiff did not seek mental health services stemming from the June 3, 2019, examination, until February 10, 2020, when Luchtefeld was no longer employed by the VA facility. (Doc. 1, pg. 8).

Plaintiff allegedly suffered emotional distress, including an aggravation of her depression, anxiety, and post-traumatic stress disorder from two tours in Iraq. (Doc. 1, pgs. 3, 5, 6-7, 9). Plaintiff also experienced pain and suffering, impaired relationships with family, the loss of a normal life, and a need for counseling. (Doc. 1, pgs. 3, 5-6, 7, 9).[1]

## II. Legal Standards

Defendant's Motion was filed under Rule 12(b)(6).[2] Such a motion argues the complaint fails to state a claim for which relief may be granted. *See Firestone Fin. Corp.*,

---

[1] On May 28, 2020, Plaintiff's administrative claim was received by Defendant. (Doc. 1, pg. 4). Plaintiff received a final decision, denying that claim, on November 16, 2021. (Doc. 1, pg. 4).

[2] The Motion was also filed under Rule 12(b)(1), which relates to subject matter jurisdiction. (Sealed Doc. 16, pgs. 1, 4). However, Defendant concedes the statutory exception at issue, namely, 28 U.S.C. § 2680(h), is not jurisdictional. (Sealed Doc. 16, pg. 4). Defendant states, "in light of such precedent, this case may be properly decided under Rule 12(b)(6) rather than Rule 12(b)(1)." (Sealed Doc. 16, pg. 4). Accordingly, the Court will not consider Rule 12(b)(1) as a basis for a dismissal of the Complaint. *See Parrott v. U.S.*, 536 F.3d 629, 634 (7th Cir. 2008) ("The statutory exceptions enumerated in § 2680(a)-(n)…limit the breadth of the Government's waiver of sovereign immunity, but they do not accomplish this task by withdrawing subject-matter jurisdiction."); *accord Reynolds v. U.S.*, 549 F.3d 1108, 1111-12 (7th Cir. 2008).

796 F.3d 822, 825 (7th Cir. 2015) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)). To survive the motion, which tests the sufficiency of the complaint but not the merits of the case, the plaintiff must allege enough facts to state a facially plausible claim for relief. *See Kloss v. Acuant, Inc.*, 462 F. Supp. 3d 873, 876 (7th Cir. 2020) (quoting *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 878 (7th Cir. 2012)); *Fosnight v. Jones*, 41 F.4th 916, 921-22 (7th Cir. 2022) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility means the plaintiff pled enough facts for the Court to draw reasonable inferences as to liability. *See Fosnight*, 41 F.4th at 922 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A complaint need not allege "detailed factual allegations," but it must state enough facts to lift the claim to relief above the speculative level. *See Kloss*, 462 F. Supp. 3d at 876 (citing *Twombly*, 550 U.S. at 555). "Threadbare recitals" of the elements, supported by mere conclusions, do not suffice. *See Trivedi v. Wells Fargo Bank, N.A.*, 609 F. Supp. 3d 628, 631 (N.D. Ill. 2022) (quoting *Iqbal*, 556 U.S. at 678). When ruling on the motion, the Court accepts all well-pleaded facts as true and draws all inferences in favor of the plaintiff. *See id.* (quoting *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)); *accord Kloss*, 462 F. Supp. 3d at 874-75.

Substantively, § 1346(b)(1) of the FTCA provides district courts with exclusive jurisdiction over claims against the United States that seek money damages for injuries caused by the negligent or wrongful act or omission of any Government employee acting within the scope of employment. *See* 28 U.S.C. § 1346(b)(1); *Midwest Knitting Mills, Inc. v. U.S.*, 950 F.2d 1295, 1296-97 (7th Cir. 1991) (discussing the FTCA); *accord Nationwide Ins. Co. v. U.S.*, 114 F. Supp. 2d 745, 749 (N.D. Ill. 2000). The circumstances must be that "the

United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *See* 28 U.S.C. § 1346(b)(1); *Midwest Knitting Mills*, 950 F.2d at 1297 ("Because the FTCA incorporates the substantive law of the state where the tortious act or omission occurred, a plaintiff must state a claim that is actionable under the substantive law in the state where the act or omission occurred."); *accord Nationwide*, 114 F. Supp. 2d at 749-50.[3] Likewise, § 2674 of the FTCA renders the United States liable, relating to the tort claims in title 28, "in the same manner and to the same extent as a private individual under like circumstances." *See* 28 U.S.C. § 2674.

Significantly, § 1346 and the other statutory provisions of the FTCA, including § 2674, "shall not apply to…[a]ny claim arising out of assault[] [or] battery."[4] *See* 28 U.S.C. § 2680(h). As discussed below, Plaintiff seeks to avoid an application of § 2680(h) by invoking 38 U.S.C. § 7316, which relates to malpractice and negligence suits under the general authority and administration of the VA. Subsection (a)(1) of § 7316 provides:

> The remedy…against the United States provided by section[] 1346(b)…for damages for personal injury…allegedly arising from malpractice or negligence of a health care employee of the Administration in furnishing health care or treatment while in the exercise of that employee's duties in or for the Administration shall be exclusive of any other civil action or proceeding by reason of the same subject matter against the health care employee…whose act or omission gave rise to the claim.

*Id*. § 7316(a)(1); *see also Doe v. U.S.*, 58 F.4th 955, 958 (8th Cir. 2023) ("Section 7316(a)(1) applies…[§ 1346(b)(1)] to claims against employees of the VA."); *Cavezza v. Metcalf*, 260

---

[3]Based on the Motion and Response, the Court notes the parties appear to agree that the relevant conduct occurred in Missouri, requiring an application of Missouri substantive law. (Sealed Doc. 16, pgs. 6-7, 10-11, ns. 4-5); (Doc. 20, pgs. 15-16); (Sealed Doc. 21, pgs. 2-4).
[4]There is an exception to this rule that is inapplicable in this case. *See*

F. Supp. 3d 823, 826 (E.D. Ky. 2017) (citing § 7316(a) and stating, "Congress…made the FTCA the exclusive remedy for a plaintiff who sues a VA health care employee for negligence.").[5] Specifically, Plaintiff invokes an "exception to the exception" found in § 7316(f), which provides: "The exception provided in section 2680(h)…shall not apply to any claim arising out of a negligent or wrongful act or omission of any person described in subsection (a) in furnishing medical care or treatment…while in the exercise of such person's duties in or for the Administration." 38 U.S.C. § 7316(f).

In Missouri, whether an act was committed within the scope of employment is measured by whether the act was done by virtue of the employment and in furtherance of the employer's business or interest, not by the time or motive of the conduct. *See Cluck v. Union Pacific R. Co.*, 367 S.W.3d 25, 29 (Mo. 2012) (quoting *Daugherty v. Allee's Sports Bar & Grill*, 260 S.W.3d 869, 873 (Mo. Ct. App. 2008); citing *Southers v. City of Farmington*, 263 S.W.3d 603, 619 n. 22 (Mo. 2008); *Ewing-Cage v. Quality Prods., Inc.*, 18 S.W.3d 147, 150 (Mo. Ct. App. 2000)); *accord Higgenbotham v. Pit Stop Bar and Grill, LLC*, 548 S.W.3d 323, 328 (Mo. Ct. App. 2018). An act is within the scope of employment if: (1) even though the act is not specifically authorized, it is done to further the business or the interests of the employer under his or her general authority and discretion, and (2) the act naturally arises from the performance of the employer's work. *See Higgenbotham*, 548 S.W.3d at 328 (citing *Dibrill v. Normandy Assoc., Inc.*, 383 S.W.3d 77, 90 (Mo. Ct. App. 2012)); *accord Inman*

---

[5] A "health care employee of the Administration," as that term is used in § 7316(a)(1), is defined as "a physician… nurse, physician assistant…or paramedical (such as medical and dental technicians, nursing assistants, and therapists), or other supporting personnel." 38 U.S.C. § 7316(a)(2).

*v. Dominguez*, 371 S.W.3d 921, 924 (Mo. Ct. App. 2012). If the act is "fairly and naturally incident to the employer's business, although mistakenly or ill-advisedly done, and did not arise wholly from some external, independent or personal motive, it is done while engaged in the employer's business." *See Higgenbotham*, 548 S.W.3d at 328 (citing *Dibrill*, 383 S.W.3d at 90); *accord Missouri Pub. Entity Risk Mgmt. Funds v. S.M.*, 473 S.W.3d 161, 164 (Mo. Ct. App. 2015); *Gilley v. Missouri Pub. Entity Risk Mgmt. Fund*, 437 S.W.3d 315, 319 (Mo. Ct. App. 2014). "Naturally" implies usual, customary, and expected conduct, such that it is foreseeable. *See Inman*, 371 S.W.3d at 924 (quoting *Maryland Cas. Co. v. Huger*, 728 S.W.2d 574, 579-80 (Mo. Ct. App. 1987)); *accord Daugherty*, 260 S.W.3d at 873 (finding a jury could determine a bartender's conduct arose from bartending because, in addition to her conduct potentially furthering her employer's business or interests, "she committed a tort—placing a toothpick in the beer—while she was engaged in an activity—serving the beer—that was usual, customary, and expected of a bartender").

### III. Analysis

Now, the Motion seeks a dismissal of the Complaint for three reasons. (Sealed Doc. 16, pg. 3). First, under § 2680(h), Defendant argues its sovereign immunity is not waived for claims arising out of assault and battery. (Sealed Doc. 16, pgs. 3, 7). Defendant posits, "Plaintiff's attempt to label her claims as negligence…cannot hide the essence of a pleading rooted in assault and battery." (Sealed Doc. 16, pg. 7).

Second, Defendant argues it did not owe a duty of care to plaintiff, and the labeling of Plaintiff's claims as negligent hiring, supervision, and retention, or the assertion of a special duty of care, does not alter that fact. (Sealed Doc. 16, pgs. 3, 7). Defendant argues

Plaintiff's claims stem from a sexual assault by a nurse practitioner and hinge on his federal employment status, rather than on any independent duty of the Government that is unrelated to Luchtefeld's employment status. (Sealed Doc. 16, pgs. 8-10). As such, Defendant argues § 2680(h) applies to bar Plaintiff's claims. (Sealed Doc. 16, pgs. 8-9).

Third, Defendant argues sexual abuse by a federal employee cannot, as a matter of Missouri substantive law, constitute conduct within the scope of employment. (Sealed Doc. 16, pgs. 3, 10). Defendant asserts that Luchtefeld's alleged actions were taken solely for personal reasons and not to serve Defendant or fulfill expectations as Plaintiff's medical provider. (Sealed Doc. 16, pg. 11). Accordingly, Defendant argues it cannot be liable for the allegations contained in Plaintiff's Complaint. (Sealed Doc. 16, pg. 11).

In response, Plaintiff argues § 7316, which Defendant failed to address in its Motion, creates an exception to § 2680(h) for purposes of Count I. (Doc. 20, pg. 1). Under § 7316(f), Plaintiff argues she need only prove Defendant's employee, Luchtefeld, as a nurse practitioner, was furnishing medical care when he initiated unwanted contact with Plaintiff. (Doc. 20, pg. 2). Further, Plaintiff suggests Defendant is raising summary judgment arguments under Rule 12(b)(6), stating the Motion "does not identify pleading deficiencies[] and it instead makes arguments about factual issues such as scope of employment." (Doc. 20, pgs. 5-7, 15). Plaintiff argues she adequately alleged Luchtefeld's acts were done by virtue of his employment with Defendant and, in part, to further its business or interests. (Doc. 20, pg. 16). Plaintiff notes, at this stage in the case, those allegations are taken as true, and argues Defendant may move for summary judgment on

Count I after taking discovery on, *inter alia*, the motive for Luchtefeld's conduct on June 3, 2019. (Doc. 20, pg. 16).

In relation to Counts II, III, and IV, Plaintiff argues she alleged Defendant was directly liable for negligence before and after Luchtefeld initiated unwanted contact with Plaintiff, so § 7316 precludes immunity. (Doc. 20, pgs. 3, 14). That is, Plaintiff argues Defendant is liable for the conduct of other employees, not just Luchtefeld. (Doc. 20, pg. 15). As such, Plaintiff argues Defendant's § 2680(h) and scope of employment arguments, relating to Luchtefeld's conduct, are irrelevant to Counts II, III, and IV. (Doc. 20, pgs. 3-4). Plaintiff posits, "all four counts [of the Complaint] arise out of some kind of 'wrongful act' either by Luchtefeld (Count I) or other Government employees (Counts II through IV), [so] much of the Government's analysis simply does not matter." (Doc. 20, pg. 10).

Here, the Court initially notes a procedural defect with the Motion. The exceptions to § 1346(b) and the other FTCA provisions, including § 2680(h), are affirmative defenses that Defendant must plead and prove. *See Keller v. U.S.*, 771 F.3d 1021, 1023 (7th Cir. 2014) (citing three Seventh Circuit Opinions); *accord Bunch v. U.S.*, 880 F.3d 938, 941-42 (7th Cir. 2018) (discussing § 2680(h) as an affirmative defense); *Lipsey v. U.S.*, 879 F.3d 249, 254 (7th Cir. 2018). The Seventh Circuit has clearly stated its reasons for treating the FTCA exceptions in this way. *See Bunch*, 880 F.3d at 942 (citing *Stewart v. U.S.*, 199 F.2d 517, 519 (7th Cir. 1952); quoting *S.R.P. ex rel. Abunabba v. U.S.*, 676 F.3d 329, 333 n. 2 (3d Cir. 2012)).[6]

---

[6]In *Bunch*, the Seventh Circuit explained as follows:

> Assigning the burden to the plaintiff would not simply shift the outcome in favor of the United States in a close case. It would also foist on the plaintiff the need to include

Nevertheless, Defendant filed the Motion under Rule 12(b)(6) instead of filing an answer to the Complaint and then a motion for a judgment on the pleadings under Rule 12(c). With only a "narrow and pragmatic exception," a motion for a judgment on the pleadings under Rule 12(c), not a motion to dismiss under Rule 12(b)(6), is "the appropriate vehicle for resolving an affirmative defense." *See Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020) (citing *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 645 (7th Cir. 2019); *Burton v. Ghosh*, 961 F.3d 960, 964-65 (7th Cir. 2020); *cf. Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009)); *accord H.A.L. NY Holdings, LLC v. Guinan*, 958 F.3d 627, 632 (7th Cir. 2020). The "narrow and pragmatic exception" relates to a plaintiff who pleads herself out of court, *i.e.*, who alleges all that is needed to satisfy the affirmative defense. *See Gunn*, 968 F.3d at 806; *U.S. v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005); *accord Corpeno-Argueta v. U.S.*, 341 F. Supp. 3d 856, 866 (N.D. Ill. 2018). Absent an application of that exception, a distinction between the two motions "is necessary to allocate correctly the burdens of pleading and proof, [citation], and serves an important notice function." *See Gunn*, 968 F.3d at 806 (citing *Guinan*, 958 F.3d at 632, quoting *Burton*, 961 F.3d at 965).

---

      allegations in her complaint designed to prove a raft of negatives—*i.e.*, that each exception does not apply—and then to prove each of these negatives as part of her case-in-chief. [Citation]. Such a system…would 'border on the preposterous,' [citation], forcing plaintiffs to prove countless negatives without any indication that the exceptions were even in play. The Third Circuit shares this view: 'just as a plaintiff cannot be expected to disprove every affirmative defense that a defendant could potentially raise, so too should a plaintiff not be expected to disprove every exception to the FTCA. [Citation]. The Third Circuit also noted that the government, not the plaintiff, will generally have superior access to the information that might trigger an exception [Citation]. This is certainly true for the…intentional-tort exception[, § 2680(h)].

*See Bunch*, 880 F.3d at 942 (citing *Stewart*, 199 F.2d at 519); quoting *Abunabba*, 676 F.3d at 333 n. 2).

In light of these authorities and the uncertain interplay between §§ 2680(h) and 7316(f) at this stage, the Court **FINDS** Defendant must plead and prove the applicability of § 2680(h) in an Answer to the Complaint if it intends to continue relying on that affirmative defense. For the reasons discussed below, the Court **FINDS** Plaintiff did not plead herself out of court, such that the Complaint may be dismissed under Rule 12(b)(6). *See Gunn*, 968 F.3d at 806; *Lewis*, 411 F.3d at 842; *Corpeno-Argueta*, 341 F. Supp. 3d at 866. In doing so, the Court emphasizes Defendant, in its Motion, failed to address § 7316.

With respect to Count I, relating to Defendant's vicarious liability for the negligent infliction of emotional distress, the Court understands Defendant's desire for judicial notice that Luchtefeld's actions against Plaintiff in Missouri on June 3, 2019, resulted in a guilty plea for second-degree sexual abuse.[7] *See Ennenga v. Starns*, 677 F.3d 766, 773-74 (7th Cir. 2012) (citing *Doss v. Clearwater Title Co.*, 551 F.3d 634, 640 (7th Cir. 2012); *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994)); (Sealed Doc. 16-1). Certainly, such a ruling might imperil Count I and create serious doubt about whether Luchtefeld's actions fall within the scope of his employment with the VA under Missouri law, as necessary under §§ 1346(b)(1) and 7316(a)(1). *See* 28 U.S.C. § 1346(b)(1); 38 U.S.C. § 7316(a)(1), (f); *see also Doe*, 58 F.4th 959 ("As the district court correctly concluded: '[Section 7316(f)]

---

[7] For a claim of negligent infliction of emotional distress, a plaintiff must generally prove (1) a legal duty of the defendant to protect the plaintiff from injury; (2) a breach of that legal duty; (3) proximate cause; (4) an injury to the plaintiff; (5) the defendant should have realized its conduct involved an unreasonable risk of causing distress, and (6) the emotional distress or mental injury was medically diagnosable and sufficiently severe to be medically significant. *See Thornburg v. Fed. Express Corp.*, 62 S.W. 3d 421, 427 (Mo. Ct. App. 2001); *accord*

merely extends FTCA liability to intentional torts committed by VA health care employees…[F]ederal courts determining their jurisdiction [under § 7316] still look to the FTCA's scope-of-employment test and corresponding state law.' ").

However, taking judicial notice of the Missouri plea document does not necessarily render conclusive the facts that underly the conviction when they do not otherwise appear in the record. And those facts are not readily ascertainable from the plea document proffered by Defendant. (Sealed Doc. 16-1). Defendant offers nothing by way of the charging document in Plaintiff's criminal case or testimony given at the plea hearing, from which the material facts could be discerned. *See Appley v. West*, 832 F.2d 1021, 1026 (7th Cir. 1987) ("When [Defendant] pleaded guilty to the two counts of mail fraud, he effectively pleaded guilty to all of the material facts alleged in the indictment on those two counts."). Moreover, without knowing the facts that supported the plea, it is impossible to know how they may interact with or affect applications of the statutes at issue. Those facts and their conclusiveness may well become a subject of dispute in this civil litigation. So, while the Court may take judicial notice of the plea document, doing so would still not fill the gap between the mere conviction for a crime and the proof necessary to establish beyond reasonable dispute the facts needed by Defendant to succeed on the Motion. Accordingly, at this time, the Court declines to take judicial notice of the guilty plea or corresponding conviction for the purpose Defendant desires.

For now, Plaintiff alleges Luchtefeld was her primary medical provider at the VA. (Doc. 1, pg. 2). On June 3, 2019, Plaintiff, who previously had a negative mammogram, presented to a VA facility for a "primary care provider established visit" for abdominal

pain below the rib line. (Doc. 1, pg. 2). Luchtefeld's examination of Plaintiff was allegedly intended to further the VA's business or interests. (Doc. 1, pg. 2). Luchtefeld then allegedly engaged in conduct that was without Plaintiff's "consent" and in "violation of [her] constitutional right to bodily integrity." (Doc. 1, pg. 3). In light of these allegations and the outstanding questions related to Luchtefeld's actions, including, *inter alia*, those related to his motive, the Court declines to conclude at the pleading stage that Luchtefeld's actions were outside the scope of his employment under Missouri law. *See Daugherty*, 260 S.W.3d at 873 (illustrating the scope of employment analysis and holding, at the summary judgment stage of the litigation, "summary judgment is also improper" because the "actions were not wholly from some external independent or personal motive"); *Doe*, 58 F.4th 963 (finding the district court in another case involving Luchtefeld, after allowing limited discovery, did not err by finding Luchtefeld's conduct was motivated by personal desires and not within the scope of his employment for purposes of the Eighth Circuit's subject matter jurisdiction, where Luchtefeld initially denied but later admitted to sexually assaulting or massaging Doe, admitted it was inappropriate to massage a patient, admitted to getting "kind of excited," failed to wear gloves, failed to document occurrences after providing treatment within his authority, prevented a report by Doe, and was breathing hard during and had an erection after the sexual assault). Instead, the Court **FINDS** Count I states a facially plausible claim for relief, meaning sufficient facts were alleged to allow reasonable inferences as to liability under §§ 1346(b)(1) and 7316. *See Kloss*, 462 F. Supp. 3d at 876; *Fosnight*, 41 F.4th at 921-22.

Next, in Counts II, III, and IV, relating to Defendant's direct liability for the negligent supervision and negligent hiring and retention of Luchtefeld, Plaintiff invokes the negligent acts or omissions of VA employees, other than Luchtefeld, who were purportedly acting within the scope of their employment.[8] *See* 28 U.S.C. § 1346(b)(1); 38 U.S.C. § 7316. Plaintiff alleges, separate and apart from Luchtefeld's conduct, Defendant is liable for the negligent acts or omissions of other employees. The Court agrees with Plaintiff that this posture distinguishes Count I from Counts II, III, and IV for purposes of the scope of employment analysis. (Doc. 20, pgs. 3-4, 10, 14-15). Taken together, Plaintiff alleges Defendant's other employees were negligent for hiring, retaining, and supervising Luchtefeld by, *inter alia*, failing to have a female nurse or assistant present for her examination, inform Luchtefeld and Plaintiff of whether the examination was recorded, have devices recording and measures deterring misconduct, and following up on Plaintiff's report. (Doc. 1, pgs. 5-8). At this pleading stage, the Court **FINDS** Counts II, III, and IV state facially plausible claims for relief, meaning they allege sufficient facts

---

[8] To succeed on a claim of negligent supervision, Plaintiff must prove Defendant was under a duty to exercise reasonable care to control Luchtefeld, while acting outside the scope of employment, to prevent intentional harm to others or the creation of an unreasonable risk of bodily harm because (1) Luchtefeld was on the VA premises, and (2) Defendant knew or had reason to know of its ability to control Luchtefeld and knew or should have known of the need and opportunity to exercise control. *See Gibson v. Brewer*, 952 S.W.2d 239, 245-46, 250 (Mo. 1997); *accord Dibrill*, 383 S.W.3d at 87; *see also Reed v. Kelly*, 37 S.W. 3d 274, 278 (Mo. Ct. App. 2000) ("[T]his cause of action also requires evidence that would cause the employer to foresee that the employee would create an unreasonable risk of harm outside the scope of his employment."); *Nickel v. Stephens College*, 480 S.W.3d 390, 402 (Mo. Ct. App. 2015) ("[A] negligent supervision claim requires as a necessary and indispensable element that the employee be acting outside of the scope of her employment."). Further, to succeed on a claim of negligent hiring and retention, Plaintiff must show (1) Defendant knew or should have known of Luchtefeld's dangerous proclivities, and (2) Defendant's negligence proximately caused her injuries. *See Gibson*, 952 S.W.2d at 246 (citing *Gaines v. Monsanto Co.*, 655 S.W.2d 568, 571 (Mo. Ct. App. 1983); *McHaffie By and Through McHaffie v. Bunch*, 891 S.W.2d 822, 825-26 (Mo. 1995); *Porter v. Thompson*, 206 S.W.2d 509, 512 (Mo. 1947)); *accord Dibrill*, 383 S.W.3d at 87.

to allow the Court to draw reasonable inferences as to Defendant's liability under §§ 1346(b)(1) and 7316. *See Kloss*, 462 F. Supp. 3d at 876; *Fosnight*, 41 F.4th at 921-22.

### IV. Conclusion

For the reasons explained above, the Motion is **DENIED**.

**SO ORDERED.**

Dated: March 27, 2023.

_____
DAVID W. DUGAN
United States District Judge