IN THE UNITED STATES DISTRICT COURT
FOR SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| HOLLY PRUIETT, a/k/a HOLLY SHORT,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant.<br><br>UNITED STATES OF AMERICA,<br><br>Third-Party Plaintiff,<br><br>vs.<br><br>WILLIAM LUCHTEFELD,<br><br>Third-Party Defendant, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 3:22-cv-992-DWD |

## MEMORANDUM & ORDER

**DUGAN, District Judge:**

Defendant, the United States of America, filed a Motion for Summary Judgment and a Motion to Exclude Testimony. (Sealed Doc. 49; Doc. 50). Plaintiff, Holly Pruiett, filed Responses in Opposition to the Motions. (Sealed Docs. 56 & 58). Defendant then filed Replies in Support of the Motions. (Sealed Doc. 159; Doc. 160). For the reasons stated below, the former Motion is **GRANTED** and the latter Motion is **DENIED as moot**.

## I. Background

Plaintiff filed a four-count Complaint against Defendant under § 2674 of the Federal Tort Claims Act ("FTCA"). *See* 28 U.S.C. § 2674; (Doc. 1, generally). Plaintiff

alleges her primary medical provider, Third-Party Defendant, William Luchtefeld, was employed by Defendant as a nurse practitioner at a Veterans' Affairs ("VA") facility. (Doc. 1, pg. 2). On June 3, 2019, Plaintiff had an appointment at the VA facility for a "primary care provider established visit." (Doc. 1, pg. 2). Plaintiff was seeking treatment for abdominal pain just below her rib line. (Doc. 1, pg. 2). Previously, Plaintiff had anxiety, which she reported was "doing better," and a mammogram that resulted in a negative biopsy. (Doc. 1, pg. 2). Without Plaintiff's consent, Luchtefeld allegedly "began holding Plaintiff's sides and rubbing on her nipples with his thumbs." (Doc. 1, pgs. 2-3).[1] Luchtefeld then "suggested…she needed a pelvic exam," which Plaintiff refused. (Doc. 1, pg. 2). Plaintiff left before further contact was made by Luchtefeld. (Doc. 1, pg. 2). On February 10, 2020, Plaintiff reported to employees of the VA facility that she needed mental health services due to the prior examination by Luchtefeld. (Doc. 1, pg. 3).

In Count I, Plaintiff alleges Defendant is vicariously liable for the negligent infliction of emotional distress by Luchtefeld. (Doc. 1, pg. 1). Defendant, through Luchtefeld, allegedly breached its duty to engage in reasonable conduct for the benefit of Plaintiff and to guard against emotional distress flowing from Luchtefeld's actions. (Doc. 1, pg. 3). Those actions—*i.e.*, the "rubbing of [Plaintiff's] nipples with his thumbs" and the "suggest[ion]…that [Plaintiff] needed a pelvic exam"—allegedly violated Plaintiff's "constitutional right to bodily integrity" and proximately caused emotional distress. (Doc. 1, pgs. 2-3). Plaintiff notes the special relationship she has with Defendant, as her

---

[1] At times in this Memorandum & Order, the Court refers to Luchtefeld's act of "rubbing on [Plaintiff's] nipples with his thumbs" as the "unconsented sexual touching."

medical provider, and her history of post-traumatic stress disorder and anxiety. (Doc. 1, pg. 3).

In Count II, Plaintiff alleges Defendant is directly liable for its negligent supervision of Luchtefeld, who was an employee working on its premises during the examination. (Doc. 1, pgs. 4-5). Defendant allegedly knew of the need and opportunity to control Luchtefeld, based on knowledge of Luchtefeld's interactions with female patients and the circumstances surrounding his examination of a female patient under the age of 35, to avoid risks of harm to patients. (Doc. 1, pg. 5). Defendant allegedly breached its duty by not having a female nurse or assistant present for the examination, informing Luchtefeld or Plaintiff of whether the examination was recorded, having devices recording the examination, or having other measures to deter misconduct. (Doc. 1, pg. 5).

In Count III, Plaintiff alleges Defendant is directly liable for negligently hiring and retaining Luchtefeld before June 3, 2019. (Doc. 1, pg. 6). Despite Luchtefeld's "dangerous proclivities," Defendant hired and subsequently retained Luchtefeld as an employee who could conduct unsupervised medical examinations of patients. (Doc. 1, pg. 6). Further, it was because of Defendant's alleged negligent hiring and retention of Luchtefeld that he could conduct the unsupervised medical examination of Plaintiff. (Doc. 1, pg. 5).

In Count IV, Plaintiff alleges Defendant is directly liable for negligently hiring and retaining Luchtefeld after a report she made on July 29, 2019. On that date, Plaintiff called the VA facility to report symptoms from a tick bite. (Doc. 1, pg. 7). It was recommended that Plaintiff follow up with Luchtefeld. (Doc. 1, pg. 7). Plaintiff allegedly stated, "I am not comfortable going back to him, but I am afraid to transfer care because he can go in

3

my records and screw them up." (Doc. 1, pg. 7). The VA facility employees did not follow up with Plaintiff about the cause of her discomfort with Luchtefeld. (Doc. 1, pg. 8). However, the following statement was allegedly recorded in her medical records:

> I assured her that providers are not able to false [*sic*] documents, and recommend that she sign up for My HealthyVet in order to monitor her records. Also, informed her that if she has a problem with any provider, she can transfer care, or contact the Patient Advocate. Informed her that she can come to JC ER for care, or go to Urgent Care via the Mission Act. She states that with her husband being hospitalized, and having to care for children, she chooses not to seek care at this time.

(Doc. 1, pg. 8).

Plaintiff alleges the VA facility employees never conducted a follow up, so Luchtefeld remained in Defendant's employ. (Doc. 1, pg. 8). On November 21, 2019, Luchtefeld sexually abused another patient. (Doc. 1, pg. 8). Luchtefeld was fired in January 2020, when the VA police arrested him for that incident. (Doc. 1, pg. 8). Since Luchtefeld was retained by Defendant after the July 29, 2019, phone call, Plaintiff did not seek mental health services stemming from the June 3, 2019, examination, until February 10, 2020, when Luchtefeld was no longer employed by the VA. (Doc. 1, pg. 8).

In each Count, Plaintiff alleges emotional distress, including an aggravation of her depression, anxiety, and post-traumatic stress disorder from two tours in Iraq. (Doc. 1, pgs. 3, 5, 6-7, 9). Plaintiff also experienced pain and suffering, impaired relationships with family, the loss of a normal life, and a need for counseling. (Doc. 1, pgs. 3, 5-6, 7, 9).[2]

---

[2] On May 28, 2020, Plaintiff's administrative claim was received by Defendant. (Doc. 1, pg. 4). Plaintiff received a final decision, denying that claim, on November 16, 2021. (Doc. 1, pg. 4).

Defendant, for its part, filed an Answer and various affirmative defenses to Plaintiff's Complaint. (Doc. 35). Defendant also filed a Third-Party Complaint, alleging contribution and implied or noncontractual indemnity, against Luchtefeld. (Doc. 25).

## II. Analysis

Defendant seeks summary judgment on Plaintiff's Complaint. The Court will grant that relief if Defendant shows there is no genuine dispute as to any material fact, such that it is entitled to a judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *accord Driveline Sys., LLC v. Arctic Cat, Inc.*, 936 F.3d 576, 579 (7th Cir. 2019) (quoting *Dunderdale v. United Airlines, Inc.*, 807 F.3d 849, 853 (7th Cir. 2015); citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Assertions that a fact cannot be or is genuinely disputed must be supported by citations to the materials contained in the record. Fed. R. Civ. P. 56(c)(1)(A). Alternatively, the assertions must be supported by a showing that the materials cited do not establish the absence or presence of a genuine dispute or that an adverse party cannot produce evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B).

If Defendant presents evidence to show the absence of a genuine dispute of material fact, then the burden shifts to Plaintiff to provide evidence of specific facts that create a genuine dispute of material fact. *See Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012) (citing *Hudson Ins. Co. v. City of Chicago Heights*, 48 F.3d 234, 237 (7th Cir. 1995)). A genuine dispute of material fact exists if there is sufficient evidence for Plaintiff to receive a verdict. *See Driveline Systems*, 936 F.3d at 579 (quoting *Aregood v. Givaudan Flavors Corp.*, 904 F.3d 475, 482 (7th Cir. 2018), *reh'g denied* (Oct. 30, 2018)). Speculation about a material fact, unsupported by the evidence, cannot defeat summary judgment.

*League, LLC*, 377 F. Supp. 3d 907, 920 (N.D. Ill. 2019) (citing *Sbika v. Ill. Cent. R.R. Co.*, 884

F.3d 708, 721 (7th Cir. 2018); *Cleveland v. Porca Co.*, 38 F.3d 289, 295 (7th Cir. 1994)).

When considering the Motion for Summary Judgment, the Court will not

determine credibility, weigh the evidence, or decide which inferences to draw from the

facts, as those tasks are for the finder of fact. *See Runkel v. City of Springfield*, 51 F.4th 736,

741 (7th Cir. 2022) (quoting *Johnson v. Advocate Health & Hospitals Corp.*, 892 F.3d 887, 893

(7th Cir. 2018)). Instead, based on the evidence, the Court will decide whether a genuine

dispute of material fact requires a trial. *See id.* (quoting *Johnson*, 892 F.3d at 893). When

doing so, the Court construes the evidence in a light most favorable to Plaintiff while

avoiding the temptation of deciding one party's version of the facts is more likely true

than the other party's version of the facts. *See id.* (quoting *Johnson*, 892 F.3d at 893).

### A. Governing Statutory Provisions

The FTCA was enacted to "broad[ly] waive[]" the sovereign immunity of the

United States. *See Doe v. U.S.*, 838 F.2d 220, 221 (7th Cir. 1988). To that end, § 1346(b)(1) of

the FTCA provides district courts with exclusive jurisdiction over claims, seeking

monetary damages for injuries caused by the negligent or wrongful act or omission of

any Government employee acting within the scope of his or her employment, against the

United States. *See* 28 U.S.C. § 1346(b)(1); *Midwest Knitting Mills, Inc. v. U.S.*, 950 F.2d 1295,

1296-97 (7th Cir. 1991); *accord Nationwide Ins. Co. v. U.S.*, 114 F. Supp. 2d 745, 749 (N.D. Ill.

2000). The circumstances must be such that "the United States, if a private person, would

be liable to the claimant in accordance with the law of the place where the act or omission

occurred." 28 U.S.C. § 1346(b)(1); *see also Midwest Knitting Mills*, 950 F.2d at 1297;

*accord Nationwide*, 114 F. Supp. 2d at 749-50.[3] Moreover, § 2674 of the FTCA renders the United States liable, as to the tort claims contained in title 28, "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674.

Importantly, though, § 1346 and the other statutory provisions of the FTCA, including § 2674, "shall not apply" to:

> Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).[4]

This statutory provision, which is known as the discretionary function exception to FTCA liability, has two requirements. *Lipsey v. U.S.*, 879 F.3d 249, 254 (7th Cir. 2018). First, the alleged wrongful act must be discretionary, as opposed to mandatory, "in that it involves an element of judgment or choice." *Id.* (citing *Keller v. U.S.*, 771 F.3d 1021, 1023 (7th Cir. 2014)); *accord U.S. v. Gaubert*, 499 U.S. 315, 322 (1991). An element of judgment or choice is not present "if a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,' because 'the employee has no rightful

---

[3]The parties agree the relevant conduct occurred in Missouri, requiring an application of Missouri substantive law. (Sealed Docs. 49, pg. 15 n. 5; 56, pgs. 37-54).

[4]In the Seventh Circuit, "[t]he statutory exceptions enumerated in § 2680(a)-(n)…limit the breadth of the Government's waiver of sovereign immunity, but they do not accomplish this task by withdrawing subject-matter jurisdiction." *Parrott v. U.S.*, 536 F.3d 629, 634 (7th Cir. 2008); *accord Reynolds v. U.S.*, 549 F.3d 1108, 1111-12 (7th Cir. 2008). Therefore, although this Memorandum & Order cites and/or discusses certain relevant out-of-Circuit decisions, where § 2680(a)-(n) is an issue of subject matter jurisdiction, the citations and discussions should not be read to suggest that the Court lacks subject matter jurisdiction in this case.

option but to adhere to the directive.' " *Gaubert*, 499 U.S. at 322 (quoting *Berkovitz v. U.S.*, 486 U.S. 531, 536 (1988)); *accord Lipsey*, 879 F.3d at 254. The Supreme Court has explained:

> [I]f a regulation mandates particular conduct, and the employee obeys the direction, the Government will be protected because the action will be deemed in furtherance of the policies which led to the promulgation of the regulation. [Citation]. If the employee violates the mandatory regulation, there will be no shelter from liability because there is no room for choice and the action will be contrary to policy. On the other hand, if a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations…. When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion.

*Gaubert*, 499 U.S. at 324 (citing *Dalehite v. U.S.*, 346 U.S. 15, 36 (1953)).

Second, the exercise of discretion must be based on public policy considerations. *Lipsey*, 879 F.3d at 254 (citing *Keller*, 771 F.3d at 1023); *see also Gaubert*, 499 U.S. at 322-23 ("[T]he purpose of the exception is to 'prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.' "); *Grammatico v. U.S.*, 109 F.3d 1198, 1202 (7th Cir. 1997) ("Decisions such as these which require the balancing of safety and economics clearly fall within the discretionary function exception."). Discretionary acts done or decisions made pursuant to a statute, regulation, or policy are protected, however, even if they are tortious. *See Gaubert*, 499 U.S. at 323 ("Actions taken in furtherance of the program were likewise protected, even if those particular actions were negligent."); *Linder v. U.S.*, 937 F.3d 1087, 1091 (7th Cir. 2019) ("The upshot of § 2680(a) is that, when some legal doctrine creates discretion, the fact that the discretion was misused and a tort ensued does not

8

lead to liability."). The Court emphasizes, when assessing the above-described requirements, it is the nature of the conduct and its susceptibility to a public policy analysis, not the actor's status or subjective intent, that governs the applicability of the discretionary function exception. *Gaubert*, 499 U.S. at 322, 325 (quoting *U.S. v. Varig Airlines*, 467 U.S. 797, 813 (1984)); *see also Reynolds*, 549 F.3d at 1112 ("The government actor's intent is of no consequence to our analysis, '[n]or must the actor belong to the policymaking or planning ranks of government in order for the exception to apply.' ").

Further, § 1346 and the other statutory provisions of the FTCA, including § 2674, "shall not apply to…[a]ny claim arising out of assault[] [or] battery." 28 U.S.C. § 2680(h).[5] In other words, notwithstanding those other statutory provisions of the FTCA, § 2680(h) deems the United States not liable for certain intentional torts, including those "arising out of assault[] [or] battery." *See id.*; *see also Millbrook v. U.S.*, 569 U.S. 50, 52 (2013) ("We have referred to § 2680(h) as the 'intentional tort exception.' "); *Doe*, 838 F.2d at 221 (Seventh Circuit noting, "[i]n construing th[e] imprecise language [of § 2680(h)], 'we should, on the one hand, give full scope to the Government's relinquishment of its historic immunity from suit, and on the other hand, avoid narrowing the provisions which set forth situations in which Congress has seen fit to retain that immunity.' ").

However, 38 U.S.C. § 7316, which, unlike § 2674 of the FTCA, is not referenced in the Complaint, relates to malpractice and negligence suits under the general authority and administration of the VA. *See* 38 U.S.C. § 7316. Section 7316(a)(1) provides as follows:

---

[5]There is an exception to this rule that is inapplicable in this case. *See*

> The remedy…against the United States provided by section[] 1346(b)…for damages for personal injury…allegedly arising from malpractice or negligence of a health care employee of the Administration in furnishing health care or treatment while in the exercise of that employee's duties in or for the Administration shall be exclusive of any other civil action or proceeding by reason of the same subject matter against the health care employee…whose act or omission gave rise to the claim.

*Id*. § 7316(a)(1); *see also Doe v. U.S.*, 58 F.4th 955, 958 (8th Cir. 2023) ("[Section] 7316 extends the FTCA remedy against the United States to claims 'arising from the provision of medical services by health care employees of the VA.' "); *Cavezza v. Metcalf*, 260 F. Supp. 3d 823, 826 (E.D. Ky. 2017) (citing § 7316(a) and stating, "Congress…made the FTCA the exclusive remedy for a plaintiff who sues a VA health care employee for negligence.").[6]

Critical to this case, § 7316(f) operates as the "exception to the exception" contained in § 2680(h). That provision states: "The exception provided in section 2680(h)…shall not apply to any claim arising out of a negligent or wrongful act or omission of any person described in subsection (a) in furnishing medical care or treatment…while in the exercise of such person's duties in or for the Administration." 38 U.S.C. § 7316(f).

### B. The Parties' Arguments as to the Motion for Summary Judgment

Having outlined the governing statutory provisions, the Court now considers the arguments of the parties that are dispositive of the Motion for Summary Judgment.

---

[6] A "health care employee of the Administration," as that term is used in § 7316(a)(1), is defined as "a physician… nurse, physician assistant…or paramedical (such as medical and dental technicians, nursing assistants, and therapists), or other supporting personnel." 38 U.S.C. § 7316(a)(2).

### 1. Defendant's Alleged Sovereign Immunity
### Under 28 U.S.C. § 2680(h) (All Counts)

Despite Plaintiff's "attempt to label her claims as negligence," Defendant argues those claims are barred by § 2680(h), as they all arise out of Luchtefeld's intentional sexual assault and/or battery. (Sealed Doc. 49, pgs. 2, 20, 22-23). Defendant notes Plaintiff sought treatment from Luchtefeld for pain in her lower right abdomen; however, rather than treat that ailment, Luchtefeld "made a series of inappropriate comments and only ever touched Plaintiff's nipples." (Sealed Doc. 49, pgs. 21-22). Defendant indicates "Plaintiff and Third-Party Defendant agree the assault was intentional, illegal, unprofessional, and inappropriate." (Sealed Doc. 49, pg. 22). Defendant also notes Plaintiff did not consent to Luchtefeld's manner of touching, Luchtefeld pled guilty to the second-degree criminal sexual abuse of Plaintiff in Missouri, and Plaintiff has another ongoing civil lawsuit against Luchtefeld that involves claims of assault and battery. (Sealed Doc. 49, pg. 22). Defendant indicates a charge of second degree criminal sexual abuse in Missouri requires a defendant to "purposely subject[] another person to sexual contact without that person's consent." (Sealed Doc. 49, pg. 22). Since there is no evidence Luchtefeld's sexual assault and/or battery was negligent, and Defendant did not have a special relationship with or owe a special duty to Plaintiff that was independent of Luchtefeld's employment with the VA, Defendant argues the difference between intentional torts and the tort of negligence is fatal to Plaintiff's claims in light of § 2680(h). (Sealed Doc. 49, pgs. 22-25).

In Response, Plaintiff argues the Seventh Circuit has rejected Defendant's interpretation of "arising out of assault[] [or] battery," as used in § 2680(h). (Sealed Doc.

56, pgs. 43-44). In Plaintiff's view, the Seventh Circuit has rejected the position that "if one of the torts in a lawsuit involves an assault or battery, that means all of the claims arise from the assault or battery." (Sealed Doc. 56, pgs. 43-44) (Emphasis in original omitted). Plaintiff suggests a claim, based on the breach of an affirmative duty assumed by Defendant, is not barred by § 2680(h) merely because the breach results in an act of sexual assault and/or battery by an employee. (Sealed Doc. 56, pg. 44). A duty exists, and a breach occurs, regardless of that sexual assault and/or battery. (Sealed Doc. 56, pg. 44).

Here, as alluded to above, § 7316 extends the remedy against the United States, provided by § 1346(b) of the FTCA, to claims allegedly arising from negligence or malpractice during the provision of medical services by health care employees of the VA. *See* 38 U.S.C. § 7316(a)(1); *Doe*, 58 F.4th at 958. Indeed, § 7316(a)(1) identifies § 1346(b) as the exclusive remedy for such claims. *See* 38 U.S.C. § 7316; *Cavezza*, 260 F. Supp. 3d at 826; *see also Ingram v. Faruque*, 728 F.3d 1239, 1247 (10th Cir. 2013) ("[T]he wording of § 7316 indicates that the VA Immunity Statute is an exclusive remedy."). What is more, § 7316(f) is the "exception to the exception" contained in § 2680(h), as § 7316(f) states the intentional tort exception found in § 2680(h) "shall not apply to any claim arising out of a negligent or wrongful act or omission of any person described in subsection (a) in furnishing medical care or treatment…while in the exercise of such person's duties in or for" the VA. 38 U.S.C. § 7316(f); *see also Levin v. U.S.*, 568 U.S. 503, 517-18 (2013) (acknowledging, when interpreting a "functionally indistinguishable" provision of a "parallel statute," that the "phrasing [of § 7316(f)], which refers to 'any person described in [§ 7316(a)]'—*i.e.*, any 'health care employee of the' VA—does indeed express Congress'

12

intent to abrogate § 2680(h)"); *Doe*, 58 F.4th 959 ("As the district court correctly concluded: '[Section 7316(f)] merely extends FTCA liability to intentional torts committed by VA health care employees.' "); *Ingram*, 728 F.3d at 1246 ("In other words, '§ 2680(h) does not bar application of the FTCA to [intentional] tort claims arising out of the conduct of VA medical personnel within the scope of' 38 U.S.C. § 7316(f)."); *Franklin v. U.S.*, 992 F.2d 1492, 1502 (10th Cir. 1993) (same). And, contrary to the suggestion in Defendant's brief, "the remedy available under § 7316(f) is not limited to [medical] battery" claims. *See Ingram*, 728 F.3d at 1249. On this point, the Tenth Circuit has recognized as follows:

> [B]y rendering 28 U.S.C. § 2680(h) inapplicable, § 7316(f) allows the United States to be sued for "assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights," 28 U.S.C. 2680(h), when such claims arise in the context of VA health care employees providing medical care or treatment, 38 U.S.C. § 7316(f). As we noted in *Franklin*, Congress could have resolved the problem in a variety of ways, and it need not have waived sovereign immunity for all of the intentional torts listed in 28 U.S.C. § 2680(h), but "Congress chose…'to expand the circumstances under which the Federal government accepts liability for the acts of its employees acting within the scope of their employment so as to cover actions of VA health-care employees that are characterized as intentional torts under the laws of various states.' " [Citation]. Thus, in the context of VA health care employees providing medical care or treatment, § 7316(f) provides a remedy under the FTCA for claims of intentional torts.

*Id.* (quoting *Franklin*, 992 F.2d at 1500 (Emphasis omitted.)); *see also Leininger v. U.S.*, 499 F. Supp. 3d 973, 991 (D. Kan. 2020) ("The plain language of th[e] exception-to-the-exception statute…does not confine the statute's waiver to claims of medical battery.").

Therefore, even if it were true that Plaintiff's alleged negligence claims "aris[e] out of assault[] [or] battery" for purposes of § 2680(h), Defendant could plausibly be liable for those claims due to § 7316(f). *See Franklin*, 992 F.2d at 1499 ("Under most

circumstances, th[e] conclusion [that the plaintiff's cause of action fell within the scope of § 2680(h)] would mandate dismissal of the case for lack of subject matter jurisdiction. [Citations]. There is, however, a countervailing statutory provision[, § 7316,] that, though it has not been raised explicitly, may be considered necessarily implicated in any VA medical tort case that turns on the operation of § 2680(h)."); *Brown v. Mercadante*, 687 Fed. App'x 220, 222 n. 4 (3d Cir. 2017) ("Although a plaintiff generally cannot seek relief under the FTCA for harm caused by intentional torts, [citation], that bar does not apply in this context pursuant to 38 U.S.C. § 7316(f)."). Furthermore, consistent with the rulings below, it is unnecessary for the Court to resolve this argument because, in any event, Plaintiff's claims cannot otherwise survive summary judgment. As such, the Court declines to resolve the non-dispositive arguments on this issue.

### 2. Luchtefeld's Scope of Employment (Count I)

To succeed on a claim of negligent infliction of emotional distress, as alleged in Count I, a plaintiff must prove: (1) a duty of the defendant to protect the plaintiff from injury; (2) a breach of that duty; (3) proximate cause; (4) an injury to the plaintiff; (5) that the defendant should have realized its conduct involved an unreasonable risk of causing distress, and (6) that the emotional distress or mental injury was medically diagnosable and sufficiently severe to be medically significant. *Thornburg v. Fed. Express Corp.*, 62 S.W. 3d 421, 427 (Mo. Ct. App. 2001); *accord Jarrett v. Jones*, 258 S.W. 3d 442, 448 (Mo. 2008).

Defendant argues Plaintiff's negligent infliction of emotional distress claim improperly seeks to hold it vicariously liable for the intentional, illegal, unprofessional, inappropriate, unexpected, and nonconsensual acts of Luchtefeld. (Sealed Doc. 49, pgs.

15-16, 22-23, 27). Defendant notes Luchtefeld's acts did not provide any medical or therapeutic purpose, as Plaintiff was not complaining of discomfort in the area of the sexual assault and the entirety of Luchtefeld's touching was inappropriate. (Sealed Doc. 49, pg. 27). Instead, Defendant argues Luchtefeld's actions were taken for personal reasons, *i.e.*, to gain intimacy with Plaintiff. (Sealed Doc. 49, pg. 27). Finally, Defendant argues Luchtefeld's sexual assault and/or battery of Plaintiff, which was not discovered until 8 months later, did not in any way serve the United States or its interests and was not the type of conduct he was expected to perform as Plaintiff's medical provider. (Sealed Doc. 49, pgs. 27-28).

In Response, Plaintiff emphasizes Luchtefeld's unconsented sexual touching, together with his suggestion of a pelvic examination, are the two independent acts alleged in Count I. (Sealed Doc. 56, pgs. 38, 47). In Plaintiff's view, the unconsented sexual touching "clearly can be described as an assault and/or battery," but the suggestion of a pelvic examination was instead a negligent act that caused emotional distress. (Sealed Doc. 56, pgs. 38-39). By focusing only on the unconsented sexual touching, Plaintiff argues Defendant ignores the suggestion of a pelvic examination and the fact that Luchtefeld also examined her lymph nodes, listened to her heart with a stethoscope, and examined her abdomen. (Sealed Doc. 56, pgs. 45, 48). Plaintiff suggests Luchtefeld's wrongful acts only occurred for 5 or 6 seconds within the broader context of a 10-to-20-minute medical appointment. (Sealed Doc. 56, pgs. 45-46). Therefore, even assuming Defendant can avoid vicarious liability "on a second-by-second basis," Plaintiff suggests Defendant cannot plausibly argue his other conduct during the furnishing of medical care

or treatment for the VA, including the suggestion of a pelvic examination, was outside the scope of employment. (Sealed Doc. 56, pgs. 45, 48). He allegedly testified that a pelvic examination, which Plaintiff refused, could explain her abdominal pain. (Sealed Doc. 56, pg. 48). Luchtefeld also allegedly stated he would have referred Plaintiff to another physician for the pelvic examination. (Sealed Doc. 56, pg. 48). As such, Plaintiff argues it was "clearly negligent," and within Luchtefeld's scope of employment, to suggest a pelvic examination after the unconsented sexual touching. (Sealed Doc. 56, pg. 48).

The Court notes the parties dispute the applicability and interplay of the various statutory provisions. (Sealed Docs. 49, pgs. 23-24; 56, pgs. 1, 45-46; 59, pg. 5). For reasons similar to those discussed in Section II.B.1, though, that is inconsequential. As to Count I, regardless of whether § 1346(b)(1) of the FTCA is implicated due to the inapplicability of § 2680(h) or due to the applicability of § 7316(f), the undisputed relevant acts of Luchtefeld did not occur within the scope of his employment under Missouri law, which is a prerequisite to Defendant's liability. *See* 28 U.S.C. §§ 1346(b)(1), 2674; 38 U.S.C. § 7316(a)(1), (f); *see also Sheridan v. U.S.*, 487 U.S. 392, 401 (1988) (noting, in the context of § 1346(b)(1), tortious conduct occurring outside the scope of employment "does not in itself give rise to Government liability whether that conduct is intentional or merely negligent"); *Doe*, 58 F.4th 959 (" '[C]ourts determining their jurisdiction under [§ 7316] still look to the FTCA's scope-of-employment test and corresponding state law.' ").

In Missouri, whether an act was committed within the scope of employment is measured by whether the act was done by virtue of the employment and in furtherance of the employer's business or interest, not by the timing of or motive for the conduct.

16

*Cluck v. Union Pacific R. Co.*, 367 S.W.3d 25, 29 (Mo. 2012) (quoting *Daugherty v. Allee's Sports Bar & Grill*, 260 S.W.3d 869, 873 (Mo. Ct. App. 2008); citing *Southers v. City of Farmington*, 263 S.W.3d 603, 619 n. 22 (Mo. 2008); *Ewing-Cage v. Quality Prods., Inc.*, 18 S.W.3d 147, 150 (Mo. Ct. App. 2000)); *accord Higgenbotham v. Pit Stop Bar and Grill, LLC*, 548 S.W.3d 323, 328 (Mo. Ct. App. 2018). An act is within the scope of employment if: (1) even though the act is not specifically authorized, it is done to further the business or the interests of the employer under his or her general authority and discretion, and (2) the act naturally arises from the performance of the employer's work. *Higgenbotham*, 548 S.W.3d at 328 (citing *Dibrill v. Normandy Assoc., Inc.*, 383 S.W.3d 77, 90 (Mo. Ct. App. 2012)); *accord Inman v. Dominguez*, 371 S.W.3d 921, 924 (Mo. Ct. App. 2012).

If the act is "fairly and naturally incident to the employer's business, although mistakenly or ill-advisedly done, and did not arise wholly from some external, independent or personal motive, it is done while engaged in the employer's business." *Higgenbotham*, 548 S.W.3d at 328 (citing *Dibrill*, 383 S.W.3d at 90); *accord Missouri Pub. Entity Risk Mgmt. Funds v. S.M.*, 473 S.W.3d 161, 164 (Mo. Ct. App. 2015); *Gilley v. Missouri Pub. Entity Risk Mgmt. Fund*, 437 S.W.3d 315, 319 (Mo. Ct. App. 2014). "Naturally" implies usual, customary, and expected conduct, such that it is foreseeable. *See Inman*, 371 S.W.3d at 924 (quoting *Maryland Cas. Co. v. Huger*, 728 S.W.2d 574, 579-80 (Mo. Ct. App. 1987)).

Here, Count I alleges "Luchtefeld began holding Plaintiff's sides and rubbing on her nipples with his thumbs" before "suggest[ing]…she needed a pelvic exam." (Doc. 1, pg. 2). That comprehensive misconduct allegedly constituted a breach of duty and violated "Plaintiff's constitutional right to bodily integrity." (Doc. 1, pgs. 2-3). Also, "[a]s

a proximate result" of the comprehensive misconduct, she allegedly "suffered and will continue to suffer emotional distress." (Doc. 1, pg. 3). Based on these allegations, it is clear Plaintiff alleges the comprehensive misconduct—*i.e.*, the unconsented sexual touching *together with* the suggestion of a pelvic examination—caused her emotional distress.[7]

Nevertheless, Plaintiff now posits, while the unconsented sexual touching was "intentional" and "clearly can be described as an assault and/or battery," the suggestion of a pelvic examination was a negligent act committed within the scope of employment. (Sealed Docs. 49, pg. 10; 56, pgs. 20, 38-39, 45-48). As an initial matter, the Court must find that position is untenable due to the necessary distinction between intentional torts and torts based on negligence, which involve contradictory and mutually exclusive theories. *Friday v. McClure*, 536 S.W.3d 235, 239 (Mo. Ct. App. 2017) (quoting *Hockensmith v. Brown*, 929 S.W.2d 840, 845 (Mo. Ct. App. 1996)). Indeed, evidence of purposeful acts negate negligence, as a plaintiff cannot recover in negligence if the only evidence is that of an intentional tort. *Id.*; *Hockensmith*, 929 S.W.2d at 845. And, when assessing a claim, courts do not merely look at its title or label. *See California Cas. Gen. Ins. Co. of Oregon v. Nelson*, No. 14-cv-604, 2014 WL 12585786, *6 (W.D. Mo. Dec. 22, 2014) ("Missouri courts would not blindly rely on the label asserted but instead would look to the factual allegations

---

[7]The Court notes, on September 9, 2021, Luchtefeld pled guilty to second degree criminal sexual abuse of Plaintiff in relation to the unconsented sexual touching. (Sealed Docs. 49, pg. 13; 51-4; 51-5; 56, pg. 27). That criminal offense involves "purposely subject[ing] another person to sexual contact without that person's consent." Mo. Rev. Stat. 566.101.1. During his change of plea hearing, the prosecution stated: "[T]he State would prove beyond a reasonable doubt that on or about June 3, 2019…the defendant, for the purpose of arousing or gratifying the sexual desire of himself, had sexual contact with H.P. by touching her breasts with his hands without the consent of H.P.… [T]he victim, H.P., was seeing…Luchtefeld for pain on her right side, and the defendant, when he was examining her, put his hands on her breasts and specifically rubbed her nipples in a circular motion." (Sealed Doc. 51-5, pgs. 9-10).

supporting the claim. Simply titling a claim as one for 'negligence' will not avoid the inescapable conclusion that the claim arises from intentional/sexual misconduct.").

Notably, courts applying the substantive law of Missouri have rejected similar attempts at pleading intentional and negligent conduct in one count of a complaint. *See*, *e.g.*, *Friday*, 536 S.W.3d at 239 (finding it was "a legal impossibility" for the plaintiff to have a submissible negligence claim while conceding the cause of death was an intentional act, where he "offered evidence probative of proximate cause…[but] offered no evidence [the defendant's] antecedent acts were both the proximate cause *and* the cause in fact of wrongful death") (Emphasis in original.); *Nelson*, 2014 WL 12585786 at *6 (finding acts and damages alleged in a petition were intentional after noting "a plaintiff cannot plead a series of intentional acts occurred, attach the label of 'negligence,' and expect courts to ignore the nature of the acts described and instead give meaningful credence to the label"); *Charter Oak Fire Ins. Co. v. Nelson*, No. 13-cv-6085, 2014 WL 5107025, *7 (W.D. Mo. Oct. 10, 2014) ("It does not matter that the Does allege Nelson was also somehow negligent in 'providing Jane Doe with items in exchange for her trust.' The Court is not convinced this allegation is somehow separate from the intentional/sexual conduct described throughout the Third Amended Petition…. [P]laintiffs cannot parse out individual components of an intentional act and claim a component part is 'negligence' in an effort to disguise the intentional conduct with an inapplicable label."); *State Farm Fire & Cas. Co. v. Caley*, 936 S.W.2d 250, 254 (Mo. Ct. App. 1997) (holding conduct causing emotional distress was intentional, not negligent, where sexual contact was intended without the consent of the plaintiff, the sexual contact was a continuation

of prior abuse, the abuse was "serious enough" to constitute battery, the emotional distress was "substantially certain" to follow from the intentional acts, and it was irrelevant whether there was a subjective intent for the emotional distress instead of another "perverted belief," as the intent attached to the natural and probable consequences of the acts); *K.G. v. R.T.R.*, 918 S.W.2d 795, 800 (Mo. 1996) (finding, as to a negligent infliction of emotional distress claim, "[t]he specific allegations contradict[ed] any possibility that the defendant's conduct was mere negligence," where the defendant's offensive sexual contact for sexual gratification was the "lynchpin" of the claim even if he did not specifically intend emotional harm); *Gallatin v. W.E.B. Restaurants Corp.*, 764 S.W.2d 104, 105 (Mo. Ct. App. 1988) (holding the trial court did not err in finding the plaintiffs stated inconsistent theories in a single count of a petition, where they alleged, *inter alia*, "the careless and negligent actions…[were] wilful, wanton[,] and intentional, and "that the carelessness, negligence[,] and intentional acts…caused severe injuries"); *Jones v. Marshall*, 750 S.W.2d 727, 728 (Mo. Ct. App. 1988) (finding "[t]here was not a scintilla of evidence in the record that would give rise to a triable issue of negligence," as the plaintiff's evidence alone indicated the actions were intentional); *Miller v. Kruetz*, 643 S.W.2d 310, 313 (Mo. Ct. App. 1982) (noting it has long been held that "the words 'negligence' and 'intentional' are contradictory"—*i.e.*, that "[a]ctions based on them are not synonymous" because "[o]ne excludes the other"—such that the plaintiff could not plead only negligence then recover on evidence of an assault and battery). It is undisputed that the unconsented sexual touching was intentional conduct by Luchtefeld. Therefore, even when taking Plaintiff's position at face value, she cannot purport to allege

comprehensive misconduct, *i.e.*, the intentional act of unconsented sexual touching together with the negligent act of suggesting a pelvic examination, negligently caused her emotional distress. *See Tharp v. St. Luke's Surgicenter-Lee's Summit, LLC*, 587 S.W. 647, 657 (Mo. 2019) ("The test for actual cause asks whether the plaintiff would have been injured but for some conduct on the defendant's behalf. [Citation]. Proximate cause, also known as legal cause, means 'the injury must be a reasonable and probable consequence of the act or omission of the defendant.' 'Proximate cause inquires into the scope of foreseeable risk created by the defendant's act or omission.' [Citation].").

Even if it were proper for the Court to parse the individual acts alleged by Plaintiff, however, that could not save Count I from summary judgment. Again, Plaintiff admits the unconsented sexual touching was "intentional" and "clearly can be described as an assault and/or battery." (Sealed Docs. 49, pg. 10; 56, pgs. 20, 38). As such, it is also clear that act was not committed to further the VA's business or interests. *See Cluck*, 367 S.W.3d at 29; *Higgenbotham*, 548 S.W.3d at 328; *Inman*, 371 S.W.3d at 924; *S.M.*, 473 S.W.3d at 164; *Gilley*, 437 S.W.3d at 319. Likewise, the unconsented sexual touching did not naturally arise from the performance of his work, as it was not usual, customary, or expected from a healthcare provider during a medical examination. *See Higgenbotham*, 548 S.W.3d at 328; *Inman*, 371 S.W.3d at 924. The evidence shows Luchtefeld's external, independent, and personal motivation was to gain intimacy with Plaintiff. *See Higgenbotham*, 548 S.W.3d at 328; *S.M.*, 473 S.W.3d at 164; *see also Gilley*, 437 S.W.3d at 319-20 (finding it was "absurd" to think a fellow inmate's rape of the plaintiff was undertaken to further the interests of Cole County, Missouri, because that rape arose from personal motives); (Sealed Docs. 49,

pg. 9; 51-3, pgs. 80, 140-41; 56, pg. 17). Therefore, Luchtefeld's unconsented sexual touching did not occur within the scope his employment, as required by § 1346(b)(1). *See Gibson v. Brewer*, 952 S.W.2d 239, 246 (Mo. 1997) ("Even the authorities cited by the [defendants] acknowledge that intentional sexual misconduct…[is] not within the scope of employment of a priest[] and [is] in fact forbidden."); *P.S. v. Psych. Coverage, Ltd.*, 887 S.W.2d 622, 625 (Mo. Ct. App. 1994) (holding unlicensed psychologist was not acting within the scope of employment by engaging in sexual relations with the plaintiff because, *inter alia*, intentional sexual misconduct "[wa]s not the general kind of activity a therapist is employed to perform," it resulted from private and personal desires, and it was not intended to further the employer's business).

Moreover, Luchtefeld's "repeated[]" suggestion of a pelvic examination could not, alone, carry the weight of Count I. (Sealed Docs. 49, pgs. 9-10; 56, pg. 17). Certainly, the suggestion of a pelvic examination by a medical professional, by itself and outside the environment in which it was made (*i.e.*, after a prior intentional "assault and/or battery") would not be tortious. Such a suggestion might be medically unnecessary or unlikely to address complaints of discomfort, but Plaintiff fails to provide meaningful support for the notion that the suggestion of a pelvic examination is actionable. Significantly, Plaintiff offers nothing to show the existence of damage that might naturally flow, without the backdrop of the "assault and/or battery," from the suggestion of a pelvic examination. And, again, the Court stresses that Plaintiff pled the unconsented sexual touching together with the suggestion of a pelvic examination caused emotional distress.

In any event, in Missouri, the tort of assault includes "any unlawful offer or attempt to injure another with the apparent present ability to effectuate the attempt under circumstances creating a fear of imminent peril." *Adler v. Ewing*, 347 S.W. 396, 402 (Mo. Ct. App. 1961) (citing 6 C.J.S. Assault and Battery § 1, subsection b, pg. 796; 1 Torts, American Law Institute, § 18); *accord Reese v. Tyson Foods, Inc.*, No. 21-cv-5087, 2021 WL 5625411, *6 (W.D. Mo. Nov. 30, 2021); *see also Armoneit v. Ezell*, 59 S.W.3d 628, 632 (Mo. Ct. App. 2001) (stating this definition of assault and noting, " '[a] battery is the willful touching of the person of another[] and has been said to be the consummation of the assault.' "). Even in the absence of violence, an assault is complete when there is intent, the present means of effectuation, and preparation by the tortfeasor. *See Armoneit*, 59 S.W.3d at 632; *accord Reese*, 2021 WL 5625411 at *6.

At the time Luchtefeld "repeatedly" suggested a pelvic examination to Plaintiff, he had already prepared for and committed "an assault and/or battery" in an attempt to gain intimacy with Plaintiff. *See Armoneit*, 59 S.W.3d at 632; (Sealed Docs. 49, pgs. 9-10; 51-3, pgs. 80, 140-41; 56, pg. 17). In addition, at that time, Luchtefeld retained the present means of furthering the "assault and/or battery." *See Armoneit*, 59 S.W.3d at 632. In fact, when asked if it was her understanding that Luchtefeld would have committed further assault if she had agreed to a pelvic examination, Plaintiff stated: "Oh, I feel like he was about to pop the stirrups open right there and move right into a pelvic exam." (Sealed Doc. 51, pg. 58). Further, after rejecting a pelvic examination, Plaintiff believed Luchtefeld "could sense [that she] was increasingly uncomfortable." (Sealed Doc. 51, pg. 68). Plaintiff "just felt really weird and off about it." (Sealed Doc. 51, pg. 68). She "just kept thinking,

23

[i]s this even a legitimate thing for the VA because…it was just odd." (Sealed Doc. 51, pg. 68). Plaintiff indicated, "after it connected…I was out of there." (Sealed Doc. 51, pg. 68).

Regardless of whether a pelvic examination would have been referred to another physician or explained Plaintiff's abdominal pain, the above statements indicate Luchtefeld's suggestion of that procedure, at a minimum, caused Plaintiff apprehension of further unconsented sexual touching. *See Adler*, 347 S.W. at 402; *Reese*, 2021 WL 5625411 at *6; *Armoneit*, 59 S.W.3d at 632; (Sealed Docs. 51, pgs. 58, 68; 51-3, pgs. 88, 132; 56, pg. 48). Therefore, as a matter of law, the "repeated[]" suggestion of a pelvic examination cannot be uncoupled from the intentional "assault and/or battery" to represent an independent act of negligence. *See Adler*, 347 S.W. at 402; *Reese*, 2021 WL 5625411 at *6; *see also Gibson*, 952 S.W.2d at 248 ("Intent denotes 'that the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it.' [Citation]. An actor intends conduct when he 'knows that the consequences are certain, or substantially certain, to result' from his act."); *compare Armoneit*, 59 S.W.3d at 632 (finding, on review of summary judgment, the defendant-employer's statements were "evidence [of] an assault in that the 'harm' in an assault is the fear or apprehension of imminent peril, which is exactly what Employer intended"); *with State ex rel. Halsey v. Phillips*, 576 S.W.3d 177, 181 (Mo. 2019) (finding, on review of a denial of a request to dismiss claims, the intentional and negligent infliction of emotional distress claims had bases that were independent of those for the assault and battery claims because the employee alleged her supervisor requested that she send him naked photographs, he sent her naked photographs of his wife, and he placed his erect

24

penis near her face at work, but the employee did not allege an apprehension of an offensive touching or an intent of her supervisor to complete an offensive touching); (Sealed Docs. 49, pgs. 9-10; 56, pg. 17). In short, the "repeated" suggestion of a pelvic examination was part of, or a continuation of, the intentional "assault and/or battery" done for the purpose of gaining intimacy with Plaintiff, rather than an independent negligent act. *See Armoneit*, 59 S.W.3d at 632; *see also Hockensmith*, 929 S.W.2d at 845 (holding the plaintiffs could not recover for negligence where, *inter alia*, the only evidence showed the defendant, who admitted to knowingly causing or attempting to cause serious physical injury in a guilty plea to felony assault, committed the intentional tort of assault and battery, and "no abstruse process of reasoning c[ould] torture it into an act of negligence"); (Sealed Docs. 49, pgs. 9-10; 51, pg. 58; 51-3, pgs. 80, 140-41; 56, pg. 17).

Finally, even if Luchtefeld's "repeated" suggestion of a pelvic examination could, by itself, constitute a negligent act within his duties at the VA, it would not necessarily be usual, customary, or expected for that act to occur immediately after "an assault and/or battery" that arose wholly from an external, independent, and personal motivation of gaining intimacy with Plaintiff. *See Cluck*, 367 S.W.3d at 29; *Higgenbotham*, 548 S.W.3d at 328; *Inman*, 371 S.W.3d at 924; *S.M.*, 473 S.W.3d at 164; *Gilley*, 437 S.W.3d at 319; *see also Doe*, 58 F.4th at 964 ("[T]he focus is on whether the act was done in furtherance of the business, not whether the act was defined within an employee's duties."); (Sealed Docs. 49, pgs. 9-10; 51-3, pgs. 80, 140-41; 56, pg. 17). Accordingly, while a heath care provider's suggestion of a pelvic examination may usually fall within the scope of employment under § 1346(b)(1), the Court cannot reach that conclusion under

the circumstances of this case. *See Cluck*, 367 S.W.3d at 29; *Higgenbotham*, 548 S.W.3d at 328; *Inman*, 371 S.W.3d at 924; *S.M.*, 473 S.W.3d at 164; *Gilley*, 437 S.W.3d at 319.

For these reasons, Defendant is **GRANTED** summary judgment on Count I.

### 3. Plaintiff's Alleged Lack Evidence and Defendant's Invocation of Other Bases for Sovereign Immunity (Counts II, III, and IV)

To succeed on a claim of negligent supervision, Plaintiff must prove Defendant was under a duty to exercise reasonable care to control Luchtefeld, while acting outside the scope of his employment, to prevent intentional harm or the creation of an unreasonable risk of bodily harm. *See Gibson*, 952 S.W.2d at 247 (quoting Restatement (Second) of Torts, § 317 (1965); citing *Conroy v. City of Ballwin*, 723 S.W.2d 476, 479 (Mo. Ct. App. 1986)); *accord Dibrill*, 383 S.W.3d at 87. Plaintiff must prove Defendant owed her that duty because (1) Luchtefeld was on the VA premises, and (2) Defendant knew or had reason to know of its ability to control Luchtefeld and knew or should have known of the need and opportunity to exercise that control of Luchtefeld. *See Gibson*, 952 S.W.2d at 247 (quoting Restatement (Second) of Torts, § 317 (1965); citing *Conroy*, 723 S.W.2d at 479); *accord Dibrill*, 383 S.W.3d at 87. That Luchtefeld was acting outside the scope of his employment is "a necessary and indispensable element" of the negligent supervision claim. *Nickel v. Stephens College*, 480 S.W.3d 390, 402 (Mo. Ct. App. 2015). Further, to maintain a claim for negligent supervision, Plaintiff must provide evidence that would cause Defendant to foresee Luchtefeld created an unreasonable risk of harm outside the scope of employment. *See Reed v. Kelly*, 37 S.W. 3d 274, 278 (Mo. Ct. App. 2000) (citing *Conroy*, 723 S.W.2d at 479); *accord Nickel*, 480 S.W.3d at 402.

Similarly, to succeed on a claim of negligent hiring and retention, Plaintiff must show (1) Defendant knew or should have known of Luchtefeld's dangerous proclivities, and (2) Defendant's negligence proximately caused her injuries. *See Gibson*, 952 S.W.2d at 246 (citing *Gaines v. Monsanto Co.*, 655 S.W.2d 568, 571 (Mo. Ct. App. 1983); *McHaffie By and Through McHaffie v. Bunch*, 891 S.W.2d 822, 825-26 (Mo. 1995); *Porter v. Thompson*, 206 S.W.2d 509, 512 (Mo. 1947)); *accord Dibrill*, 383 S.W.3d at 87. As with a claim for negligent supervision, Plaintiff must submit evidence that would cause Defendant to foresee that Luchtefeld created an unreasonable rise of harm outside the scope of employment. *See Higgenbotham*, 548 S.W.3d at 328 (citing *Dibrill*, 383 S.W. at 87).

Defendant argues the record is devoid of evidence on the elements of negligent hiring, retention, and supervision. (Sealed Doc. 49, pgs. 17-18). As to Count II, Defendant argues there is no evidence that the United States could foresee Luchtefeld created an unreasonable risk of harm to any individual, such that Defendant needed to exercise control over his patient visits. (Sealed Doc. 49, pg. 19). Indeed, Defendant notes Luchtefeld "had several uneventful visits with Plaintiff prior to the assault, which included times when the two were left alone in a room." (Sealed Doc. 49, pg. 19). As to the VA's chaperone policies, Defendant argues they are irrelevant to its knowledge of the need and opportunity to control Luchtefeld, there is no competent testimony from a qualified expert that shows they were deficient, Luchtefeld was responsible for ensuring they were followed, and Luchtefeld's education, training, continuing education, and history as a nurse practitioner were consistent with his training on the chaperone policies. (Sealed Doc. 49, pg. 19). Also, the VA's chaperone policies were arguably inapplicable to

27

Plaintiff's gender-nonspecific examination, as Plaintiff presented to the VA for abdominal pain under the ribcage, she never described an examination of her breasts or genitalia, and Luchtefeld was not examining her breasts or genitalia." (Sealed Doc. 59, pgs. 1-2).

As to Counts III and IV, Defendant argues there is no evidence the United States knew or should have known of any proclivity of Luchtefeld, let alone a dangerous proclivity related to the "assault and/or battery" of a patient. (Sealed Doc. 49, pg. 18). In doing so, Defendant relies upon Luchtefeld's employment and hiring history, which is discussed in detail below. (Sealed Doc. 49, pg. 18). Further, as to Count IV, specifically, Defendant notes Plaintiff did not report Luchtefeld's misconduct to the triage nurse or the VA's Patient Advocate, despite being told by the triage nurse that she could do so. (Sealed Doc. 49, pgs. 18-19). Therefore, even if Plaintiff's phone call on July 29, 2019, could somehow impute knowledge to Defendant, it argues there is no evidence of a subsequent negligent act, proximate cause, or injury to Plaintiff. (Sealed Doc. 49, pg. 19).

In Response, as to Count II, Plaintiff notes there are standards for providers to protect patients, the VA has chaperone policies, a chaperone was present at prior examinations of Plaintiff by Luchtefeld, and the chaperone policies were meant to prevent sexual assaults like that perpetrated by Luchtefeld but were deficient or not followed in this case. (Sealed Doc. 56, pgs. 39-40, 42). Plaintiff also argues the aforementioned standards, the VA's chaperone policies, and the prior provision of chaperones to Plaintiff evinces a duty by Defendant. (Sealed Doc. 56, pg. 41). Further, in light of the physician-patient relationship and other standards, Plaintiff suggests Defendant had a special relationship with Plaintiff, such that it had a duty to control

Luchtefeld to prevent physical harm. (Sealed Doc. 56, pgs. 40-41). That is, Defendant's duty arguably arose from their special relationship and not solely from any knowledge of an ability, need, and opportunity to control Luchtefeld. (Sealed Doc. 56, pg. 41).

As to Count IV, Plaintiff argues Defendant "blames" her, a "PTSD victim," for only giving "some notice" that Luchtefeld made her uncomfortable without "going the extra mile" of contacting additional VA personnel or providing answers to questions that were not asked. (Sealed Doc. 56, pg. 42). Plaintiff also argues the VA's chaperone policies were inadequate, and the failure to follow up with Plaintiff caused the VA to retain Luchtefeld. (Sealed Doc. 56, pg. 42). Plaintiff was not advised of his dismissal until January 2020, so she did not receive counseling until February 2020. (Sealed Doc. 56, pg. 42).

As discussed below, there is no evidence Defendant knew or should have known of the need to exercise control over Luchtefeld for purposes of Count II. *See Gibson*, 952 S.W.2d at 246-47; *Dibrill*, 383 S.W.3d at 87; *Reed*, 37 S.W. 3d at 278; *Nickel*, 480 S.W.3d at 402. Similarly, Plaintiff proffers no evidence that Defendant knew or should have known of Luchtefeld's proclivities for purposes of Counts III and IV. *See Gibson*, 952 S.W.2d at 246-47; *Dibrill*, 383 S.W.3d at 87; *Higgenbotham*, 548 S.W.3d at 328.[8]

Initially, Luchtefeld's work history in the nursing profession, which spanned 35 years and 2 months, did not alert Defendant to any need and opportunity to exercise control over Luchtefeld or to any dangerous proclivities. (Sealed Doc. 49, pg. 7; 56, pgs. 12-13). Prior to 2019, Luchtefeld never inappropriately touched a patient. (Sealed Doc. 49,

---

[8]Plaintiff concedes there is not sufficient evidence to support Count III. (Sealed Doc. 56, pg. 2 n. 1).

pgs. 4-5; 56, pg. 8). As of June 3, 2019, Luchtefeld never received a patient complaint about conduct during a medical visit. (Sealed Doc. 49, pg. 5; 56, pg. 8). And, when obtaining employment at the VA on four separate occasions between 1996 and 2017, Luchtefeld completed an application and an interview. (Sealed Doc. 49, pg. 5; 56, pg. 9). The hiring process, which included a background check and fingerprint scans, "found 'no issues' each time." (Sealed Doc. 49, pgs. 5-7; 56, pgs. 9, 11-12). The VA confirmed his licensure "was in good standing with no reported discipline." (Sealed Doc. 49, pg. 7; 56, pg. 12). Around two-and-a-half months before the "assault and/or battery," a VA Proficiency Report rated Luchtefeld "as 'outstanding' (the highest rating)." (Sealed Doc. 49, pgs. 7-8; 56, pgs. 13-14). In September 2019, he "received a pay raise and cash award based upon his work performance as [then] understood by the VA." (Sealed Doc. 49, pg. 8; 56, pg. 14).

Moreover, it is undisputed that the VA's national directive, setting forth a written chaperone policy, only requires "[a] female chaperone…during breast and pelvic exams," including Pap smears and procedures like urodynamic testing or pelvic floor physical therapy. (Sealed Docs. 49, pg. 3; 56, pg. 4). It is also undisputed that a memorandum from the VA's St. Louis Health Care System states: "A female chaperone will be in the examination room during gender-specific examinations, procedures, or treatments involving the breast, genitalia, and rectum, regardless of the gender of the provider." (Sealed Docs. 49, pg. 3; 56, pg. 4). In this case, Plaintiff presented to the VA for a "primary care provider established visit" related to abdominal pain below the rib line. (Doc. 1, pg. 2; Sealed Docs. 49, pg. 9; 56, pg. 15). As such, Plaintiff's reason for presenting to the VA does not implicate its chaperone policies on which Luchtefeld was undisputedly trained.

(Sealed Doc. 49, pgs. 5-6; 56, pg. 10). Similarly, despite Plaintiff's suggestion to the contrary, the Court cannot find the auscultation of heart sounds on Plaintiff's skin is a "gender-specific examination[], procedure[], or treatment[] involving the breast," as to implicate those policies on June 3, 2019. (Sealed Docs. 49, pgs. 3, 10-11; 56, pgs. 4-5, 18-19, 21-23, 29; 59-1, pgs. 1-2). Plaintiff makes this suggestion while conceding the VA policies "highly recommend[]," but do not mandate, chaperones "for similar exams," such as electrocardiograms and echocardiograms. (Sealed Doc. 56, pg. 5 n. 3).

Based these undisputed material facts, the Court finds summary judgment for Defendant is independently warranted on Counts II, III, and IV. As to Count IV, which relates only to conduct occurring on or after July 29, 2019, the Court notes it is undisputed that on July 29, 2019, "Plaintiff called the VA and spoke with a triage nurse concerning a recent tick bite." (Sealed Docs. 49, pg. 11; 56, pg. 23). Plaintiff advised the triage nurse that "I am not comfortable going back to him, but I'm afraid to transfer care because he can go in my records and screw them up." (Sealed Docs. 49, pg. 11; 56, pg. 23). Plaintiff indicates she also stated, among other things, "I d[on't] want to go back to him," "I [am] uncomfortable seeing him," and "he creeped me out." (Sealed Doc. 56, pg. 23). Otherwise, it is undisputed that Plaintiff did not report any details about Luchtefeld's comprehensive misconduct, such as the unconsented sexual touching, the "repeated" suggestion of a pelvic examination, and the other inappropriate comments. (Sealed Docs. 49, pg. 11; 56, pg. 24). As a matter of fact, at that time, Plaintiff had "made a conscious decision not to report the assault to the VA." (Sealed Docs. 49, pg. 11; 56, pg. 24). Nevertheless, it is from the discussion with the triage nurse, or the triage nurse's alleged

failure to follow up with Plaintiff or to advance her statements through the chain of command, that Defendant purportedly knew or should have known of Luchtefeld's dangerous proclivity. The Court cannot leap to that conclusion as a matter of law.

Plaintiff's statements concerning the July 29, 2019, phone call with the triage nurse, though certainly understandable in hindsight, did not rise to the level of indicating Luchtefeld had a dangerous proclivity to commit sexual "assault and/or battery" against VA patients. Similarly, in terms of the steps taken by the triage nurse, Plaintiff's own allegations indicate she was "assured that providers are not able to false [*sic*] documents." (Doc. 1, pg. 8). The triage nurse recommended that Plaintiff sign up for My HealthyVet in order to monitor her medical records. (Doc. 1, pg. 8). Plaintiff was also informed, if she had a problem with any provider, she could transfer care or contact the Patient Advocate. (Doc. 1, pg. 8). Finally, Plaintiff was informed that she could present to "JC ER" or "Urgent Care via the Mission Act." (Doc. 1, pg. 8). These allegations regarding the conduct of the triage nurse are confirmed by the undisputed material facts. (Sealed Docs. 49, pg. 11; 56, pg. 24). And, again, at the time of the July 29, 2019, phone call, Plaintiff had made "a conscious decision not to report" the "assault and/or battery," a decision that she adhered to until February 10, 2024. (Sealed Docs. 49, pgs. 11-12; 56, pgs. 24, 26). Based on these undisputed material facts, the Court concludes as a matter of law that neither the July 29, 2019, phone call nor the triage nurse's subsequent conduct shows Defendant knew or should have known of Luchtefeld's dangerous proclivity to sexually "assault and/or batter[]" VA patients. *See Gibson*, 952 S.W.2d at 246-47; *Dibrill*, 383 S.W.3d at 87.

As such, Defendant is **GRANTED** summary judgment on Counts II, III, and IV. By virtue of this conclusion, the Court finds it is unnecessary to fully consider Defendant's invocation of sovereign immunity based on § 2680(a) of the FTCA and Plaintiff's reliance on theories of corporate or institutional negligence. (Sealed Doc. 49, pgs. 28-33). Again, as a matter of law, the Court has found: (1) neither the VA's national directive nor the memorandum from the VA's St. Louis Health Care System were implicated in this case; and (2) it cannot be said that the triage nurse who answered Plaintiff's phone call on July 29, 2019, knew or should have known of a dangerous proclivity of Luchtefeld to commit "assault and/or battery" against VA patients.

When arguing the VA's chaperone policies are deficient, however, the Court notes Plaintiff relies only upon Joint Commission Standard RI.01.06.03, which states: "[T]he patient has the right to be free from neglect; exploitation; and verbal, mental, physical, and sexual abuse." (Sealed Doc. 51-11, pg. 3). An element of performance for Standard RI.01.06.03 is that "[t]he hospital determines how it will protect the patient from neglect, exploitation, and abuse that could occur while the patient is receiving care, treatment, and services." (Sealed Doc. 51-11, pg. 3). Assuming that Standard governs the VA's chaperone policies, Plaintiff's own logic suggests determinations on "protect[ing] the patient from neglect, exploitation, and abuse" are left to the discretion of particular VA facilities, as to implicate § 2680(a) and bar the applicability of the FTCA. *See* 28 U.S.C. § 2680(a); *Lipsey*, 879 F.3d at 254; *Gaubert*, 499 U.S. at 322-25; *Linder*, 937 F.3d at 1091.

### III. Conclusion

For the foregoing reasons, the Motion for Summary Judgment is **GRANTED** and the Motion to Exclude Testimony is **DENIED as moot**. As to the Complaint (Doc. 1), the Clerk of the Court is **DIRECTED** to enter judgment for Defendant and against Plaintiff at the close of the case. In addition, although it appears the disposition of the Motion for Summary Judgment extinguishes the Third-Party Defendant's liability to the Third-Party Plaintiff, those parties are **DIRECTED** to file a Joint Status Report on the proper course for the Third-Party Complaint (Doc. 25) and/or a Stipulation of Dismissal within 7 days.

**SO ORDERED.**

Dated: September 19, 2024

_____
DAVID W. DUGAN
United States District Judge